UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SUMERU HEALTH CARE GROUP, L.C. )
d/b/a/ THE CENTER FOR INTERNAL )
MEDICINE AND PEDIATRICS )
                               )
        Plaintiff,             )   No. 3:02-cv-447
                               )
v.                             )
                               )
MICHAEL T. HUTCHINS, individually )
and as administrator of CLAIBORNE )
COUNTY HOSPITAL, and BAPTIST   )
HEALTH SYSTEMS OF EAST         )
TENNESSEE, INC.                )
                               )
        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendants' Motion for Summary Judgment. [doc. 43]. Plaintiff responded to Defendant's brief [doc. 53] and Plaintiff filed a reply [doc. 60]. Defendants filed a supplemental brief [doc. 71], Plaintiff responded[1] [doc. 74], and Defendants replied [doc. 78]. Oral argument was held on June 15, 2015. The Motion is now ripe for disposition and will be **GRANTED**.

## RELEVANT FACTS

This case arises from the Plaintiff's plan to contract overseas physicians to serve citizens of rural communities in East Tennessee and the Defendants' alleged agreement to assist him in succeeding with his business venture. Plaintiff, Sumeru Health Care Group, L.C. ("Sumeru") is an LLC that operated five medical clinics in Tennessee from the late 1990s until 2003. The LLC was owned and controlled by Dr. Mohan Kutty. Defendant Hutchins was an employee of Baptist

---

[1] Plaintiff's supplemental brief is comprehensive and incorporates the earlier arguments.

Health Systems, a private company that contracted to provide administrative services to Defendant Claiborne County Hospital ("CCH"). There is no dispute that he was an agent of CCH and acted as its Administrator at all times relevant. CCH is a governmental entity owned by Claiborne County.

In 1998, Dr. Kutty learned of Tennessee's "State 20" program, which allowed foreign born physicians to work in the United States if they agreed to work in "medically underserved" communities in the state. (Kutty Depo at 165-66). Sumeru chose to place its clinics in Hawkins County, Union County, and Claiborne County, Tennessee, as they had been identified as medically underserved areas. (Kutty Depo at 172). To obtain the necessary H-1B visas, which lifted certain residency restrictions on their temporary J-1 visas, the physicians were required to enter employment agreements and to obtain immigration waivers from the Secretary of Health and Human Services. Sumeru contracted with eighteen physicians ("the Physicians") and assisted them in obtaining the required waivers in exchange for their work at the clinics.

Sumeru opened its first clinic in Union County in 1998. (Kutty Depo. at 173-74). In February of 1999, Dr. Kutty met with Mr. Hutchins and others about his continuing plans to open a Sumeru clinic in Tazewell, Claiborne County. (Hutchins Depo. at 37-40). Dr. Kutty testified that they specifically discussed a plan to bring in internists to staff both the Tazewell Clinic and CCH's Emergency Room, which would prevent patients from being transferred to nearby counties. (Kutty Depo. at 208). Dr. Kutty also planned to bring a new cardiologist, Dr. Naseem, to the area. (Kutty Depo. at 210). Dr. Kutty represented that the new physicians would benefit CCH by increasing the hospital's occupancy. (Kutty Depo at 217). It is disputed whether Mr. Hutchins promised to grant the Physicians hospital privileges at CCH (Kutty Affidavit at ¶ 33) or merely offered his general support for the plan. In any event, Plaintiff claims that it relied

on Mr. Hutchins's representations at the meeting in its decision to base Sumeru's operations in Claiborne County and to station Dr. Naseem there, rather than at the clinic in Rogersville, Tennessee. (Kutty Affidavit at ¶ 29-33).

Sumeru opened its clinic in Tazewell in February 2000. (Kutty Depo. at 222). The Physicians began working in the CCH Emergency Room ("ER") and admitting patients to CCH. Sumeru claims that Mr. Hutchins began improperly enticing them to breach their employment contracts within a few months. (Kutty Affidavit at ¶ 48). Dr. Kutty believed that some of the Physicians, particularly Dr. Naseem, had stopped working full-time at the Tazewell Clinic and were seeing patients at CCH. (Kutty Affidavit at ¶ 47-48). By early 2001, the relationship between Sumeru/Kutty and the Physicians had soured. (Kutty Affidavit at ¶ 55). An attorney acting on behalf of the Physicians sent Dr. Kutty a letter alleging that Sumeru had not paid the Physicians' salaries. On February 28, 2001, eight of the Physicians filed a complaint against Dr. Kutty with the U.S. Department of Labor ("DOL"). The Tazewell clinic closed at the time of the DOL complaint. (Kutty Affidavit at ¶ 11). None of the Physicians have since been employed by CCH. Ultimately, all five Sumeru clinics failed. Sumeru alleges this was a result of CCH's actions.

Sumeru filed this action in August of 2002. In its Amended Complaint, Sumeru made claims for (1) tortious interference with prospective business relationships, (2) fraud and/or negligent representation, (3) breach of implied contract and breach of implied duty of good faith, and (4) unfair competition. Plaintiff alleged that CCH caused its losses by inducing the Physicians to violate their employment contracts by referring patients to CCH for services that could have been performed at the clinics (Amended Compl. at ¶ 34), inducing improper billing practices (Amended Compl. at ¶ 35; 44), providing financial incentives for the Physicians to

terminate their contracts (Amended Compl. at ¶ 40), and engaging in other unspecified conduct intended to cause the Physicians to breach their agreements with CCH (Amended Compl. at ¶ 45). This action was ultimately stayed pending the outcome of the DOL claims against Kutty. [doc. 62].

A DOL investigation found that Sumeru had willfully failed to pay the Physicians' wages and had discriminated against them for whistleblowing. (D&O at pp. 2). On appeal, the DOL held a sixteen-day administrative trial to determine the Physicians' claims against Kutty. On October 9, 2002, the Administrative Law Judge ("ALJ") issued a "Decision and Order," determining that Dr. Kutty violated provisions of the Immigration and Nationality Act ("INA"). The ALJ made multiple findings of fact and law relevant to the events involved in this action. Most significantly, she rejected Dr. Kutty's argument that he had ceased paying the Physicians because they were moonlighting at other facilities (including CCH) and thus were not fulfilling their obligations under the employment agreements. The agreements required that the Physicians "should devote 40 hours per week to the practice of Primary Care for the Employer . . . . [and] shall perform such medical duties . . . as Employer may reasonably require including hospital rounds and call duties." The ALJ determined that the Physicians were not "moonlighting" because Dr. Kutty specifically directed them to work at other facilities and their time spent there thus counted toward the required forty hours. (D&O at 72 n. 31). She further found that there was no evidence that the Physicians received any payments for the alleged extracontractual work. (D&O at 16, 72). Ultimately, the ALJ determined that "the doctors were fulfilling their obligations and trying to build their practice despite difficult conditions, including insufficient planning, over-expansion, poor management of key functions such as billing, and under-funding of the clinics[.]" (D&O at 73). Therefore, Dr. Kutty was not justified in withholding their salaries

or terminating their employment. The ALJ attributed the failure to pay the Physicians to the business's financial difficulties. (D&O at 73).

The ALJ also determined that Sumeru's failure to pay the Physicians was a violation of the INA's "required wage" and "no benching" provisions and that Sumeru wrongfully retaliated against the Physicians for filing the complaint with the DOL. Dr. Kutty himself had testified that he stopped paying the Physicians when he received a letter from an attorney demanding payment in accordance with the INA, and later fired them during the DOL investigation. (D&O at 15). The ALJ ordered Sumeru to pay the Physicians' back salaries and imposed fines for the violations. She also determined that Sumeru was the "alter ego" of Dr. Kutty and pierced the veil to hold him personally liable for the judgment. (D&O at 100).

Dr. Kutty appealed the decision to the DOL's Administrative Review Board ("ARB"), which affirmed the ALJ and concluded that Dr. Kutty retaliated against the Physicians in refusing to pay their salaries and then terminating their employment. (ARB Order at 12). His proffered reasons, that the Physicians were not fulfilling the contracts, were adjudged unsupported pretext. (ARB Order at 14). Kutty appealed the ARB's decision to this Court, and then to the Sixth Circuit Court of Appeals, both of which also affirmed. *Kutty v. U.S. Dept. of Labor*, No. 3:05-cv-510 1011 WL 366476 (E.D. Tenn. August 19, 2011); *Kutty v. U.S. Dept. of Labor*, 764 F.3d 540 (6th Cir. 2014). On January 20, 2015, United States Supreme Court denied Dr. Kutty's petition for certiorari, making the DOL judgment final. 135 S. Ct. 1162 (2015). On April 4, 2015, having been notified that the appeals process was exhausted, this Court lifted the stay [doc. 68] and now addresses the pending Motion for Summary Judgment [doc. 43].

## STANDARD OF REVIEW

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56. Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(e)(1)(A). Rule 56(c)(1)(B) allows a party to "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

III.

*Analysis*

**Defendants' Objection to Dr. Kutty's Affidavit**

Defendants object to Dr. Kutty's affidavit [doc. 75]. Defendant argues that Plaintiff cannot rely on Dr. Kutty's affidavit, because it contradicts his deposition testimony. The Sixth Circuit has held that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). "*Reid* and its progeny have thus barred the nonmoving party from avoiding summary judgment by simply filing an affidavit that directly contradicts that party's previous testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006).

The Court has considered the affidavits in light of Defendants' objection. To the extent a portion of Dr. Kutty's affidavit directly contradicts his earlier deposition testimony, the Court will not consider that portion of the affidavit.

**Collateral Estoppel**

Defendants argue that the doctrine of collateral estoppel should apply to preclude the relitigation of facts determined by the ALJ. Collateral estoppel attaches to the findings of administrative bodies as well as courts. *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966). The Sixth Circuit prescribes a four-part test to determine if collateral estoppel applies:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Smith v. SEC*, 129 F.3d 356, 362 (6th Cir. 1997). With regard to the ALJ's factual findings, the test is satisfied. The facts and issues, particularly those regarding the Physicians' actions in fulfilling their contracts and Dr. Kutty's actions in failing to pay the Physicians and then retaliating against them, were actually raised, argued, and litigated in an extensive proceeding, after which the ALJ issued a detailed opinion. The ALJ's decision that Dr. Kutty wrongfully terminated the Physicians for complaining to the INA and that Dr. Kutty owed them back pay required her to find that the Physicians fulfilled their obligations under the contracts and that Dr. Kutty's "moonlighting" claims were pretextual. The third prong was met when the ALJ's order became final earlier this year. Finally, Sumeru d/b/a The Center for Internal Medicine had a full opportunity to participate in the administrative proceedings. Dr. Kutty and The Center for Internal Medicine and Pediatrics were the named parties in the DOL action, and the proceedings specifically concerned the events occurring as the Center was operating under the Sumeru name in Tennessee. Dr. Kutty owned Sumeru, had the same interests as Sumeru in the DOL proceedings, and was its primary agent in all matters relevant to both that case and this one. Furthermore, the ALJ specifically found that Sumeru was Dr. Kutty's alter ego, and that he was its sole owner and operator.

Sumeru argues that collateral estoppel should not apply because the legal questions in this action are not identical to those in the DOL action: "Collateral estoppel is not applicable in this action where there is no identity of issues in the DOL litigation and the present litigation." (doc. 74 at pp. 23). Plaintiff's argument centers on the differences between the *legal claims* and

the *legal issues* in the two cases. (see doc. 74 at pp. 23). This is misplaced. There is no argument that the claims in the DOL case were identical to those in this action. They very clearly were not—a federal wage and hour claim would never preclude a state tortious interference claim. However, there is no argument that claim preclusion should apply here; CCH is arguing <u>issue preclusion as to questions of fact</u>, e.g., the Physicians were not moonlighting. To be certain, the DOL did not address whether there was a contract between Sumeru and CCH. However, to the extent that they are relevant here, the facts that the ALJ did determine will control in this action.

### The Claims

Both sides have filed extensive briefs with a number of nuanced arguments. The Court does not find it necessary to address each action because it is evident that, even if the claims are valid, the Plaintiff cannot meet the elements of any claim under the ALJ's facts. Specifically, Sumeru cannot show that its injuries were caused by the Defendants' actions or that it suffered any cognizable damages outside of those it caused itself. The ALJ found (1) that the Physicians fulfilled their obligations under the employment agreements, (2) that Dr. Kutty willfully and unjustifiably withheld their pay, and (3) that Dr. Kutty was not justified in terminating or constructively terminating the Physicians' employment. The ALJ also found that Sumeru was suffering from financial difficulties due to undercapitalization and mismanagement. Based on those facts, there is no scenario in which the Plaintiff's losses can be attributed to CCH and/or Mr. Hutchins. It is clear from the ALJ's factual findings that the Physicians were performing as was contemplated by their agreements, and it was Sumeru that caused its own demise when it stopped paying their salaries. At oral argument, Plaintiff's counsel represented that its injury stemmed in part from the decision to move the base of Sumeru's operations to the Tazewell clinic and to place the cardiology equipment at that office, rather than another of the clinics. This

argument is speculative; Sumeru has produced no evidence to suggest that it would have been successful had it placed the operation's center anywhere else. In fact, the evidence and the ALJ's findings indicate that Sumeru's financial difficulties were system-wide and ran far deeper than the losses at the Tazewell clinic; indeed the mismanagement and under-funding would have occurred in any event.

## CONCLUSION

Based on the foregoing, Plaintiff cannot meet its burden of showing that there is any a genuine issue of fact left for trial. Because the undisputed facts dictate that Plaintiff was the cause of any alleged injury suffered, it cannot support its claims and Defendants are entitled to judgment as a matter of law. The elements of causation and damages are common to all of Plaintiff's claims, and the lack thereof is equally fatal to each; the Court therefore declines to address the parties' additional arguments. Defendants' Motion for Summary Judgment [doc. 43] is hereby **GRANTED** as to all claims and this case is **DISMISSED**.

**IT IS SO ORDERED.**

Enter:

                                          s/ Thomas W. Phillips
                                          UNITED STATES DISTRICT JUDGE

ENTERED AS A JUDGMENT
  s/ *Debra C. Poplin*
  CLERK OF COURT